[Filed June 14, 1887.]

ABBY R. CLARK, APPELLANT, *v.* MARY A. PRATT ET AL., RESPONDENTS.

TRUST, RESULTING — EVIDENCE TO ESTABLISH. — The court will not declare a trust where one of the parties to the transaction is dead, and the evidence of the other — *the only witness* — is uncertain and unsatisfactory, and a long time is suffered to elapse before the commencement of the suit.

APPEAL from Wasco County. Affirmed.

*Dufur & Dufur,* for Appellant, cite on constructive trusts, 1 Perry on Trusts, 17; 1 Pomeroy's Equity Jurisprudence, § 155:

A trust results the instant the deed is taken. (1 Perry on Trusts, §§ 133, 1261; *Settembre* v. *Putnam,* 30 Cal. 490; *Roberts* v. *Ware,* 40 Cal. 634; *Coates* v. *Woodworth,* 13 Ill. 634; *Simpson* v. *Eckstein,* 22 Cal. 580; *Reeve* v. *Strawn,* 14 Ill. 94; *Hidden* v. *Jordan,* 21 Cal. 93; *Follansbee* v. *Kilbreth,* 17 Ill. 522; *Somers* v. *Overhulser,* 67 Cal. 237; *Millard* v. *Hathaway,* 27 Cal. 119; *Case* v. *Codding,* 38 Cal. 191; 2 Story on Equity Jurisprudence, § 1201; *Springer* v. *Young,* 12 Pac. Rep. 400; also as to heirs, etc., also on homestead uncompleted, p. 172; *Currey* v. *Allen,* 34 Cal. 354.)

A part of the purchase money paid by another there is a resulting trust as to that part. (*Somers* v. *Overhulser,* 67 Cal. 237; *Keyser* v. *Mangham,* 7 West C. Rep. 21; *Hidden* v. *Jordan,* 21 Cal. 93; *Case* v. *Codding,* 38 Cal. 191; Hill on Trusts, 115.)

The trust may be proven by parol. (1 Perry on Trusts, §§ 137, 226; *Smith* v. *Butler,* 11 Or. 46; *Millard* v. *Hathaway,* 27 Cal. 119; Code, § 771, p. 264.)

Statements of a deceased are admissible against his interest. (Code, § 679, p. 2471; Greenleaf on Evidence, §§ 147, 153, 169, 189.)

The Statute of Limitations does not begin to run until the discovery of the fraud. (Code, § 178, p. 189, as amended 1878, p. 25; 1 Perry on Trusts, §§ 137, 226.)

Statute of Frauds does not extend to trusts created or declared by the parties. (1 Perry on Trusts, § 137.)

*Gates & Bradshaw*, for Respondents.

In all cases the allegation and proof must agree. (1 Perry on Trusts, §§ 133, 134, 137; 1 Hare & Wallace Pl. Cas. in Eq. 292; *Harksken* v. *Harsevered*, 7 N. W. Rep. 749; 2 Pomeroy's Equity Jurisprudence, § 1040, and notes.)

Where a resulting trust is sought to be established by parol evidence, in a case where the consideration money is expressed in the deed to have been paid by the person in whose name the conveyance is taken, and nothing appears in such conveyance to create a presumption that the purchase money belonged to another, the uncorroborated parol evidence of the plaintiff, after the death of the grantee in the deed, is insufficient to establish a resulting trust. (2 Story on Equity Jurisprudence, 634, 635.)

The Statute of Limitations will run in favor of a trustee from the time he ignores or disclaims the trust. (*Geholard* v. *Sattlar*, 40 Iowa, 152; 2 Story on Equity, § 1520; *Otto* v. *Schlaapkaht*, 10 N. W. Rep. 649; Angell on Limitations, §§ 178, 469, 472.)

Equity will not raise a trust on an unlawful contract or agreement. (*Clark* v. *Bailey*, 5 Or. 343; Perry on Trusts, § 131.)

STRAHAN, J. — This suit was originally commenced by Henry B. Sampson as plaintiff. Its object was to ascertain and declare a resulting trust in certain real property, situate in Wasco County, in favor of the plaintiff. The complaint in substance alleges that in 1872 said Sampson bargained with W. D. Gilliam for the real property in controversy for the price and sum of twelve hundred dollars; that L. E. Pratt, the ancestor of defendants, wished to have one half of said land, and it was agreed between said Sampson and Pratt that each should pay one half the purchase money, and that a deed for said land should be taken in their joint names; that Sampson was obliged to return to Yamhill County, where he now and for thirty years last past has resided, and that Gilliam was obliged to go to Oregon City before said deed could be executed; that said land was a homestead claim, upon which said Gilliam had not resided for the full period of five years at the date of said contract, and that he thereafter continued his residence on said

XV. OR.—20.

land with L. E. Pratt until his residence was completed, and then obtained a patent therefor, and that he thereafter executed a deed to said Pratt for said land; that said Sampson left six hundred dollars with said Pratt to pay for one half of said land, and that Pratt, intending to defraud the plaintiff, contrary to his agreement, took the deed to said land in his own name; that soon after the execution of said deed, Sampson inquired of Pratt about the purchase of said land, and was assured by Pratt that the deed had been taken in their joint names as had been agreed, and had been recorded; that Sampson relied upon this information and believed it to be true, and did not know of Pratt's fraud in taking the deed to himself until after Pratt's death, and in 1885; that Sampson paid taxes on said land until 1875, at which time he made a contract with Pratt that he should pay the taxes out of the proceeds of Sampson's property, which Pratt did; that Sampson had known Pratt for many years and had great confidence in him, and believed him to be honest, and intrusted to him a large number of cattle and horses; that before and about the time of the purchase of said land, Sampson intended to and did bring cattle and horses from the Willamette Valley, and run them upon the land, and that when Pratt took an interest in the land he was to have an interest in the cattle; that Sampson furnished nearly all the cattle—Pratt but few—and they were all put in one band and run as the company cattle of Sampson and Pratt; that in 1874 Sampson had become equal in the cattle, and that Pratt was to occupy all of said land, and for the use of Sampson's interest therein was to care for a few mares and their increase, then on said land and owned by said Sampson, and that thereafter Pratt occupied said land and cared for said horses as rental therefor until his death; that until 1874 Sampson visited said land annually, since which time he has been, and is now, unable to make such visits by reason of sickness; that after Pratt's death, his widow and heirs continued to reside upon said land, and their administrator delivered to said Sampson said mares and their increase. The answer puts in issue all of the material allegations of the complaint. The trial in the court below resulted in a decree for the defendants, dismissing the

suit, from which decree this appeal is taken.    The evidence was reduced to writing upon an order of reference for that purpose, and accompanies the transcript, and the cause has been fully heard here upon the entire record.    After the appeal was perfected, Henry B. Sampson died intestate, and on the application of his next of kin and heirs at law the suit has been revived in this court in their names.

The plaintiffs' case rests entirely upon the evidence of Henry B. Sampson.    An examination of his testimony leads us to the conclusion that it is too uncertain and unsatisfactory upon which to base a decree, and especially so, when the suit was not commenced until after Pratt's death.    Sampson's statements are entirely wanting in that precision and certainty which equity will always exact and require before disturbing a legal title. In addition to this, the great lapse of time which has intervened since the making of the deed and the commencement of this suit cannot be overlooked.    Of course this is not decisive against the plaintiffs, but if unexplained, it is an element which must weigh against them.    Sampson evidently realized this and sought to make such explanations as he might, but they are entirely unsatisfactory.    Assuming that he was unable to return to Wasco County after 1874 by reason of sickness, it could hardly be possible during the eleven years that Pratt lived on the land and managed Sampson's business for him, that he would never have written a single letter to Sampson, or sent him a tax receipt or any memorandum or statement of their business.    And yet, so far as appears, during all of that time, these parties never had any communication whatever, by letter or otherwise.    The circumstances surrounding the whole transaction are all against the plaintiffs, and we do not think they are accounted for or explained in any satisfactory manner.    We do not find it necessary to discuss any of the legal questions presented, but decide the case solely on the insufficiency of the plaintiffs' evidence to make out a case that would entitle them to any relief whatever.

Let the decree of the court below be affirmed.