# THE

# MISCELLANEOUS REPORTS

OF THE

# STATE OF NEW YORK

COMMENCING JANUARY, 1920.

PHOEBE DUFFY, Plaintiff, *v.* CHARLES WILSON et al.,
Defendants.

(Supreme Court, Chautauqua Special Term, January, 1920.)

Title — real property — deeds — specific performance.

The title to three distinct parcels of land conveyed by separate deeds which, though recorded, were never delivered to the grantee, was taken in the name of the adopted son of the purchasers who after the discharge of record of the several purchase money mortgages which he had executed, and shortly before his death, gave a new mortgage covering the whole property which his foster mother paid some time after the death of his foster father. In an action to have it adjudged that the land belonged to the widow of the foster father or that she had a lien for the amount of the last mortgage, the plaintiff's evidence was to the effect that the properties were deeded to the adopted son in the expectation that he would survive her; that he took no part in the negotiations for the purchase of the lands, never had anything to do with their management, paid no part of the purchase price, but that upon her death he was to become the absolute owner. *Held,* that the heirs of the adopted son took the estate intended for him.

The action should be treated as one for specific performance and plaintiff having made most of the payments for the pur-

1

Supreme Court, January, 1920.     [Vol. 110.

chase price from money received from the rents and profits of the land, and from the earnings of the adopted son, a judgment that she have the use of the land for life, was a proper disposition of the case.

ACTION to establish title to real property.

Murle L. Rowe, for plaintiff.

C. B. Livermore, for defendants.

LAING, J. In 1871 at Evans, N. Y., the plaintiff and her hubsand, James Duffy, adopted John Burton Duffy, then an infant. From that time until his death, on March 5, 1903, he lived with his foster parents. The defendants are his heirs. James Duffy died in 1907. The lands described in the complaint were purchased, one parcel in 1895 for $400, one parcel in 1897 for $500 and the third parcel in 1899 for $1,260. There was paid in cash for the first parcel $175, and for the third parcel about $100. The balance of the purchase price of the lands was secured by mortgages. The deeds ran to John Burton Duffy and were recorded. The mortgages were executed by him. Payments were made on these mortgages from time to time until they were reduced to about $800, and on the 25th day of February, 1903, the last of these mortgages was discharged, and a new mortgage for $800 was given covering the three parcels of land. This mortgage also was executed by John Burton Duffy. About eight days subsequent to its execution he died. Payments were made on the $800 mortgage from time to time subsequent to his death, and the last payments were made, and the mortgage was discharged, some time after the death of James Duffy.

It is the claim of the plaintiff that the whole purchase price of said premises, including the $800 mortgage, was paid by her. Her evidence is that John

Burton was never a well boy, that he worked but little, and that such money as he earned was used by himself. She admits she was the head of the family, received all money earned by her husband, and looked after all business transactions. The weight of evidence is that, although John Burton Duffy was never strong, he did work for many years in the canning and box factories, and that while not so employed, he worked with his foster father, cultivating part of the premises, and assisting in raising and marketing crops. He had no bad habits and spent very little money upon himself. My belief is that he contributed considerable money for many years to the family fund and by his work upon the farm helped materially toward the support of the family.

Some of this land was rented for a number of years to the canning company for $100 per year, and a small cottage upon one of the parcels has been usually rented for $3 per month. One Henry Burmaster rented part of the land for seven years, and paid therefor $715. All rents were received by the plaintiff. James Duffy was usually employed, although his earning power was not large. It is the position of the plaintiff that these lands were deeded to John Burton Duffy so that they might be his upon her death, and that they were so deeded with the expectation that he would survive her. Her testimony is that he took no part in the negotiations for the purchase of the lands, never had anything to do with their management, and paid no part of the purchase price. The plaintiff's testimony also is that the deeds were never delivered to the grantee. It appears, however, that they were placed on record.

The contention is that the plaintiff is entitled to a judgment determining that the lands belong to her, or determining that she has a lien upon the same for the

moneys paid for the purchase price, or, at the minimum, determining that she has a lien for $800 paid upon the last mortgage. 'Legal obstacles are in the way of such relief and it is not logically suggested by the evidence. The fact that the plaintiff expected the adopted child would outlive her does not furnish a reason why a court of equity should decree that these premises belong to her, or that she is entitled to a lien for moneys paid toward the purchase price. The.premises were deeded to John Burton Duffy, and the evidence of the plaintiff is that it was always intended that he should, upon her death, become the absolute owner of the same. If so, his heirs take the estate intended for him. Considering the relationship of the parties, the manner in which moneys earned were used, the use of the lands and their income, the probable use of the moneys earned by the adopted son and the statements made by the plaintiff since his death, it is a fair inference that there was an implied, if not express, agreement that the plaintiff should have a life estate in the lands. She has carried out her part of the agreement, and it may be fully enforced for her benefit. Section 270 of the Real Property Law provides: " Nothing contained in this article abridges the powers of courts of equity to compel the specific performance of agreements in cases of part performance." This section, I think, puts aside the obstacles that have been suggested, relative to the right of the plaintiff to maintain this action. The action should be treated as one for specific performance. The plaintiff having performed, full performance may be enforced even against these defendants. A judgment along these lines is not only permitted by the law but is in harmony with the equities involved in the case. John Burton Duffy was an asset and not a liability to his foster parents. The

plaintiff doubtless made most of the payments for the purchase price of these properties, but the major part of the money used to make such payments came from the rents and profits received from the land and from the earnings of the son. A judgment that the plaintiff have the use of the land for life is, I think, the proper disposition of this case.

Judgment accordingly.