Argued June 3; reversed July 13; rehearing denied
September 14, 1937

## DAHL *v.* SIMONSEN ET AL.

(70 P. (2d) 49)

B. G. *Skulason*, of Portland (Skulason & Skulason, of Portland, on the brief), for appellants.

C. W. *Robison*, of Portland (Leland B. Shaw, of Portland, on the brief), for respondent.

KELLY, J. The maiden name of the deceased wife of defendant, Jens Simonsen, was Inga Aalberg. She was a niece of plaintiff and in 1914 she and her sister, Christine, came with plaintiff to the United States from

Norway. At that time plaintiff was married to a man named Anderson, and had gone on a visit to Norway the place of her birth. After plaintiff returned to the United States with her nieces Inga and Christine, plaintiff and her husband Anderson made their home on a farm in Nebraska. Inga and her sister Christine lived in Nebraska with their aunt the plaintiff for a number of years and up until the time in 1920 when Mr. Anderson died. The farm was then sold, plaintiff receiving $3,500 for the same. Of the proceeds of that sale, plaintiff deposited $3,150 in the Midland National Bank of Minneapolis, Minnesota. Thereafter plaintiff married the late John K. Dahl and in May or June, 1922, plaintiff and her husband, Dahl, and her nieces, Inga and Christine, came to Portland, Oregon. Shortly after their arrival in Portland, plaintiff and her husband acquired a piece of real property known as 1072 East 25th street in the Alberta district in Multnomah county, Oregon. The purchase price was $3,500. Five hundred dollars was paid by plaintiff and the balance by Mr. Dahl. Sometime prior to June 10, 1925, plaintiff, Julia Dahl, and her husband John K. Dahl, now deceased, conveyed said real property to said Inga Aalberg. On June 10, 1925, said Inga Aalberg executed a last will and testament by which she bequeathed and devised all her property to plaintiff. In 1926, John K. Dahl died, leaving some cash on deposit in the Hibernia Bank of Portland. The amount of this deposit is not definitely fixed. Plaintiff asserts that it was from $1,000 to $1,400. In 1926, after the death of said John K. Dahl, the real property above mentioned was sold. This sale was negotiated by plaintiff and said Inga Aalberg. On April 5, 1926, the real property in suit, known as lot 3 in block 8, in Dixon Place, numbered 3815, Northeast 17th Avenue, in Portland, Multnomah county, Ore-

gon, was purchased and the deed thereto was executed by Charles Erdman and Marie Erdman, husband and wife, as grantors, to Inga Aalberg as grantee.

Plaintiff claims to have furnished the entire consideration for the purchase of the real property in suit. On April 12, 1932, said Inga Aalberg married said defendant Jens Simonsen.

Subsequent to 1914, and until the death of Inga Aalberg Simonsen on June 30, 1935, the relationship between plaintiff and said Inga Aalberg Simonsen was very close, like that of mother and daughter.

Plaintiff also claims that it was to make it easier for Inga to handle the business for her that the title of the two pieces of real property aforesaid was put in the name of her niece. When asked,—

"What was the reason of putting that [the title to the Alberta 25th Street property] in her [Inga's] name?" plaintiff answered:

"For easier for her to handle the business for me because I can't read and write and my eyes got poor so I can't see very well."

Despite this explanation, plaintiff testified that she herself attended to the payment of $2,500 to Mr. Erdman when the property in suit was purchased. We quote her testimony in that regard:

"Q. Who did you pay that money to? A. Mr. Erdman.

Q. Mr. Erdman. Did you pay him the money yourself?

A. Yes.

Q. Did you pay it in check or cash? A. Cash.

Q. Why did you pay it in cash? A. I couldn't handle checks.

Q. You couldn't handle checks? A. No.

Q. So you paid Mr. Erdman $2,500 on this property, which is known as lot 3, block 18 [sic] Dixon Place? A. Yes."

Certainly plaintiff's testimony, last quoted, does not indicate that she intended that Inga would handle the business for her. If Inga had transacted the business then there would have been no difficulty at all about the use of checks.

The plaintiff testified that her niece, Inga Aalberg Simonsen, wrote upon the deed from Erdmans "If anything happen to me this deed goes to my Auntie Mrs. Julia Dahl. Inga Aalberg." This, the plaintiff says, was done in her presence about one month before Mrs. Simonsen died. It will be remembered that at that time Mrs. Simonsen was enceinte. Aside from that, there is nothing in the record indicating that the circumstances which attended the making of this endorsement were of a character to produce any other than her usual and customary style of penmanship. The writer thinks that Mrs. Simonsen did not write that endorsement. A careful comparison of it with her admittedly genuine writing leads to this conclusion. It is not signed Inga Aalberg Simonsen or Inga Simonsen, formerly Inga Aalberg.

It will be remembered that at a former time Mrs. Simonsen had executed her last will and testament, and must therefore have known the propriety and advisability thereof. She had entered into contracts concerning real property and had executed at least one deed of conveyance thereto. The writer is of the opinion that she would not have written anything about where the deed would go; but would have disposed of the property either by deed or will.

The statute requires evidence of an express trust to be in writing: Section 9-905, Oregon Code 1930. Holding that Mrs. Simonsen did not execute the endorsement dissipates any basis upon which plaintiff

can claim that a trust was created otherwise than by operation of law for the reason that there is no other writing in the record by which such a trust might have been created.

■ Plaintiff's testimony to the effect that Mrs. Simonsen never at any time had had a joint bank account with plaintiff, in view of the fact that the records of the bank disclosed the fact to be that there was such joint account, impairs and weakens the rest of her testimony.

It is true that the real estate agent, who conducted the negotiations for the sale of the property at 1072 East 25th street, and for the purchase of the property in suit, testified that at that time Mrs. Simonsen told him that the property belonged to plaintiff, and that she, Mrs. Simonsen, had no interest in it. As stated, the Erdman-Aalberg deed was executed on April 5, 1926. The realty broker testified on the 22d day of October, 1936. Ten years is a long time to remember a conversation so vividly.

■ Where a deed is taken in the name of one whom the person paying the purchase money is under a legal or moral obligation to provide for, as a wife or child, the presumption is that the purchase was intended as an advancement or settlement and not in trust for the person furnishing the money: *De Roboam v. Schmidtlin*, 50 Or. 388 (92 P. 1082); *Holohan v. McCarthy*, 130 Or. 577 (281 P. 178).

"Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, a resulting trust does not arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property." Vol. 2, Restatement of the Law of Trust, A. L. I. § 442, p. 1355.

■ The rule stated in the above quoted section 442 applies where the payor stands in loco parentis to the transferee; that is, where the payor whether or not related to the transferee has assumed to act in place of a parent of the transferee. Comment a, idem.

■ To overcome the presumption that the purchase was intended as a transfer or settlement, the evidence must be of the most convincing and satisfactory kind: *De Roboam v. Schmidtlin*, supra; *Parker v. Newitt*, 18 Or. 274 (23 P. 246); *Barger v. Barger*, 30 Or. 268 (47 P. 702); *Holohan v. McCarthy*, supra.

"The fact that a suit is instituted after the death of the person sought to be charged as trustee, is a strong circumstance for refusing to establish a trust. Clark v. Pratt, 15 Or. 304, 14 P. 418."

*Holohan v. McCarthy*, supra.

On this phase of the case, plaintiff quotes 2 Bogert, Trusts and Trustees, p. 1405, as follows:

"There is no presumption of a gift where uncles or aunts and nephews or nieces are concerned * * * Gifts of this type are abnormal rather than usual. There is no duty to support and no high degree of affection which makes likely a gift."

Neither the foregoing text nor the cases cited in support thereof hold that the relationship of uncles or aunts and nephews or nieces prevents the application of the presumption of gift where the uncle or aunt is shown to have stood in loco parentis.

In the case at bar, plaintiff's witness, Christine Aalberg, testified directly that the relationship between plaintiff and Mrs. Simonsen was like that of mother and daughter.

We venture to quote from a decision by the supreme court of West Virginia:

"Another fact against this trust is that, as above stated, Jasper declared, when the deed to Creed was agreed upon, that it was to be made to Creed and he (Jasper) would help him pay for the land, as Creed had lived at his home, and had been a good boy, and, if he ever got able, he could pay it back, and if not, it would be all right. Creed had come to Jasper's house when a small boy, and lived with and worked for the latter, and Jasper was as a parent, being his uncle. When one pays for land, and the title is made to a stranger, the presumption is that he who paid intended to own; but if the person invested with title is a wife, son or near relative, or one to whom the purchaser has placed himself in loco parentis, there is no resulting trust." *Harris v. Elliott*, 45 W. Va. 245 (32 S. E. 176).

In the case of *Duffy v. Wilson*, 180 N. Y. S. 669, 110 Misc. Rep. 1, the presumption was applied to the relationship of foster mother and adopted son. This presumption was recognized but held to have been overcome by other evidence in *Dines v. Hyland*, 180 Wash. 455 (40 P. (2d) 140).

We quote from the last cited case:

"For more than forty years prior to his death in September, 1933, Hans Pederson was a resident of Seattle. About 1900, he was married to Marie Madsen. In 1911, the Pedersons took into their home the four children of Mrs. Pederson's brother. Among them was the plaintiff in this action, Millie Madison Dines. At that time, the plaintiff was about 13 years of age. She continued to reside with the Pedersons until her marriage some ten years later. Although she was not adopted by the Pedersons, she was in all respects and at all times treated as a daughter.

"As we view the case, the question presented is solely one of fact. Before proceeding, however, it may be well to advert briefly to two or three rules of law

under which the facts are to be considered. First, where one standing in loco parentis pays the purchase price of property, and causes it to be conveyed to one to whom he sustains such relation, no presumption of a resulting trust arises. On the contrary, the presumption is that the conveyance was intended to be a gift or settlement. 1 Perry on Trusts (7th Ed.) Sec. 143; 3 Pomeroy's Equity Jurisprudence (4th Ed.) § 1039; Adley v. Pletcher, 55 Wash. 82, 104 P. 167. The presumption, however, is rebuttable. 1 Perry on Trusts (7th Ed.) § 145. (We shall assume in discussing the facts, that Hans Pederson stood in loco parentis to appellant.)''

In *Adley v. Pletcher*, cited in the foregoing quotation, the presumption was applied to the relationship of grandmother and granddaughter as well as to that of mother and daughter.

■ Some significant facts are shown which prevent us from holding that plaintiff has clearly and convincingly shown that she furnished all of the purchase price of the property in suit. The price of this property was $6,100, and the date of its purchase was April 5, 1926.

On March 29, 1926, the plaintiff and her niece Inga opened a joint savings account in the First National Bank of Portland with an initial deposit of $2,350. While testifying, the plaintiff denied the existence of this account; but in her brief, we find it stated that ''it appeared from the testimony that at that time a joint account was opened at the First National Bank so that the payment or check which would be made in the name of Inga Aalberg could be deposited in the First National Bank.''

This statement is unconvincing. Besides being completely inconsistent with plaintiff's sworn testimony, it implies a necessity which did not exist, if the property belonged to plaintiff, namely, that plaintiff could not

receive the payments or deposit the same if drawn to her.

After the purchase of the property at Alberta and 25th street, plaintiff says that she made the following major expenditures and investments:

| | |
|---|---:|
| Furniture | $ 500.00 |
| Foshay stock | 3,000.00 |
| Initial payment on property in suit | 2,500.00 |
| Commission to real estate agent | 250.00 |
| Balance of purchase price of property in suit secured by mortgage favor Equitable Savings and Loan Association | 3,600.00 |
| Simonsen mortgage on Puyallup property | 1,700.00 |
| | $11,550.00 |

In her first cross-examination plaintiff testified that her receipts or resources were:

| | | |
|---|---:|---:|
| Proceeds from sale of farm deposited in the Midland Bank at Minneapolis | | $ 3,150.00 |
| Money from Mr. Dahl estate | $1,000 to | 1,400.00 |
| Cash on hand in house | 500 to | 600.00 |
| Proceeds from sale of Alberta Street property | | 4,300.00 |
| Total | | $ 9,450.00 |

Later, plaintiff testified that she received from a mortgage held by her former husband the further sum of $1,200; making the corrected total, $10,650; balance unaccounted for $900.

It is true that in her testimony plaintiff refers to the receipt of rent from the residences and a garage as well as dividends on the Foshay stock; but we think that

her current personal expenses would exhaust these items of income.

Viewing the testimony most favorably to plaintiff, we think that she has not given the source of the full purchase price of the property in suit. No claim is made that any part of the $1,000, which plaintiff brought from Norway in 1908, remained in her hands for investments in 1922.

Mrs. Simonsen, the mother of the infant defendant, is not here to testify. Her lips, unfortunately, share the silence of her grave. The record, however, discloses that sometime in the early part of 1924, Mrs. Simonsen, whose name then was Inga Aalberg, began work as a dressmaker. That was two years before the property in suit was purchased. The final payment upon the purchase price of the property in suit was made only a short time after the closing of the joint bank account which occurred on April 22, 1929. Thus it appears that a period of five years elapsed before the property in suit was fully paid for during which Mrs. Simonsen had an earning capacity of from $2 to $6 per day when employed.

From the time of closing the joint bank account on April 22, 1929, until January 5, 1930, Inga accumulated $800 which she deposited in a savings account in the United States National Bank. She continued to deposit money from time to time in that bank until in September, 1933, her account showed a balance to her credit of $1,656.42.

It is not an unreasonable deduction to say that she probably saved as much during the first five years which elapsed after she began working as a dressmaker as she saved during the four years and five months thereafter.

Plaintiff's explanation of her niece's failure to retain any of her earnings during the first five years of her employment was that the niece underwent an appendicitis operation which cost $150, for surgical and medical attendance and $15 hospital expense; that she expended $100 upon dentistry and incurred further expense by consulting a doctor for a stomach disorder about six months. Neither the surgeon, the dentist, nor the stomach specialist was called.

Defendant, Jens Simonsen, engaged in fishing in Alaska, during the fishing seasons. Upon his return in 1932, Mrs. Simonsen asked him to make some repairs upon the house on the property in suit. He testified that while the three of them, plaintiff, Mrs. Simonsen and defendant Simonsen, were sitting together in the front room, Mrs. Simonsen said to plaintiff: "Jens like to know who the house belong to." * * * "before he start to do any repair of the house." To this, according to his testimony, Mrs. Dahl, the plaintiff, said: "Haven't you told him yet?" To this, Mrs. Simonsen said, "No". Whereupon, "Mrs. Dahl said everything that was there was Inga's."

This is denied by plaintiff, but it is admitted that defendant Simonsen repaired the roof and painted the house at his own expense. Plaintiff says that it was done in consideration of the free use of the house. Simonsen also testified that his wife paid the taxes on the property in suit for the year 1934. Plaintiff testified that Simonsen made payment of the taxes for one year, but plaintiff furnished the money.

It is apparent that ill feeling exists between plaintiff and defendant Jens Simonsen. Before his marriage to her niece, he repaired the roof of the garage. Plaintiff says that she paid for the materials. Simonsen denies this.

Simonsen testified that after his wife's death plaintiff took everything in the house, or as he expressed it,— "She cleaned out the house."

We quote from his testimony:

"Q. Did she or did she not clean out the house?
A. She cleaned out the house.
Q. Did she give any reason for doing that? A. No.
Q. Did you ever talk to her about it?
A. Yes, I did, when she moved.
Q. What did she say about that?
A. She said everything was hers.
Q. Did she say what she was going to do to you?
A. She was going to spit me in the face.
Q. Spit you in the face?
A. Yes."

We cannot conceive that there was no property at all in the house belonging to Mrs. Simonsen. The conclusion is all but irresistible that at the time plaintiff took it, she thought that Mrs. Simonsen's will was in effect wherein everything belonging to Mrs. Simonsen had been bequeathed and devised to plaintiff.

This gives color to the contention of defendants that it was not until plaintiff learned that Mrs. Simonsen's marriage had had the effect of revoking the will, that plaintiff contended that the property in suit did not belong to Mrs. Simonsen.

For the foregoing reasons, the decree of the circuit court is reversed and plaintiff's amended complaint is dismissed.

BEAN, C. J., and BELT and ROSSMAN, JJ., concur.