[Filed March 7, 1887.]

FRED. H. AND ELIZABETH BALDOCK *v.* SAMANTHA JOHNSON.

CONVEYANCE — CONSIDERATION — MISTAKE — MISREPRESENTATION. — Where a grantor in a deed acts under a total misconception of his legal rights, or the extent of his interest or estate in the thing granted, or where his confidence is imposed upon to his injury, and in other like cases, the lack of an adequate consideration will have a natural bearing on the question whether the deed ought to stand or not.

SAME—FIDUCIARY RELATIONS—PARENT AND CHILD.—A child is presumed to be under the exercise of the parental influence so long as the dominion of the parent lasts, and in such case it lies on the parent maintaining a gift from such child to disprove the exercise of such influence.

SAME.—Where the defendant, by importunity and misrepresentation, obtained a deed from her daughter, who, at the time, was only about seventeen years old, and, though recently married, still lived with the grantee, and it appears that such deed was made by the daughter in entire ignorance of her rights, it will not be allowed to stand.

BAKER COUNTY.    Plaintiffs appeal. . Reversed, and decree as prayed for in the complaint.

*G. O. Holman* and *Ramsey & Bingham*, for Appellants.

Where the inadequacy of consideration is so gross that it shocks the conscience, it will be sufficient ground for canceling a conveyance or contract executed or executory, without any other inequitable incidents. (2 Pom. Eq. Jur., § 927 and note 3, and § 928; *Groynne* v. *Heaton,* 1 Bro. Ch. 1, 9 ; 1 Story, Eq. Jur., § 246.) A child is presumed to be under the exercise of parental influence as long as the dominion of the parent lasts. Whilst that dominion lasts, it lies on the parent maintaining the gift or deed to disprove the exercise of parental influence, by showing that the child had independent advice, or in some other way. (2 Pom. Eq. Jur., §§ 848 and 962 ; *Wright* v. *Vaderplank,* 8 De G., M. & G. 133, 146 ; 1 Story Eq. Jur., § 309a, [12 ed.] ; *Worrall's Appeal,* 1 Central Rep. [Pa.] 201 ; *Ashton* v. *Thompson,* 18 N. W. Rep. 918 ; *Samson* v. *Samson,* 25 N. W. Rep .233, and cases cited in note.) Mistakes of a person with respect to "his own private legal rights and liabilities, may be properly regarded—as in a great measure they really are—and may be dealt with, *as mistakes of fact.*" (2 Pom. Eq. Jur., § 849; Kerr, Fraud and Mistake, 398–402 ; *Evarts* v. *Strode,* 11 Ohio, 480.) Where the legal principle is doubtful, and one about which ignorance may well be supposed to exist, a person acting under a misapprehension of the law, will not forfeit his rights by reason of such mistake. (*Lamott* v. *Bowley,* 6 II. & J. [Md.] 500 ; *Cumberland Coal Co.* v. *Sherman,* 20 Md. 117, 151 ; *Layton* v. *Cyrtis,* 51 Me.

140; *Jordon* v. *Steven*, 51 Me. 78; *Lowndes* v. *Chisholm*, 2 McCord [S. C.] 455; *Moneland* v. *Atchinson*, 19 Tex. 303; *Griffcth* v. *Townly*, 69 Mo. 13; *State* v. *Paul*, 13 Ark. 129; 1 Story's Eq. Jur., Secs. 138c, 138e, 138f and 138g [12 ed.]; 2 Pom. Eq. Jur., Secs. 842–844.) When the mistake of law is mutual, the transaction entered into under the misapprehension should be set aside. (Kerr on Fraud and Mistake, 399; 1 Story Eq. Jur., § 134.) If the mistake of law was induced and encouraged by the person benefited by a contract, the transaction should be canceled by a court of equity. (Kerr on Fraud and Mistake, 400; 2 Pom. Eq. Jur., § 847.)

*Zera Snow*, for Respondent.

Plaintiffs have abandoned the case made in the pleadings, and now seek relief on the ground of mistake. But a bill alleging fraud cannot be supported by proof of mistake. "A plaintiff cannot declare upon one duty or obligation, and recover upon another." (*Stephens* v. *Murton*, 6 Or. 197; *Honeyman* v. *O. & C. Ry.*, 13 Or. 357; Kerr on Fraud and Mis. 366–7, n.; *Kimball* v. *Rutland Ry.*, 26 Vt. 249; *Eyre* v. *Potter*, 15 How. 42; *Williams* v. *Sturtevant*, 27 Ala. 598; *Stebbins* v. *Eddy*, 4 Mason, 414; *Smith* v. *Babcock*, 2 Woodom, 246; *White* v. *Denman*, 1 Ohio St. 110.) No case of mistake such as the law takes notice of is made either in the pleadings or proof. (*Stephens* v. *Murton*, 6 Or. 197; *Lewis* v. *Lewis*, 4 Or. 177; *Lewis* v. *Lewis*, 5 Or. 169; *Evens* v. *Steger*, 5 Or. 147; 2 Pomeroy's Eq., Secs. 839–842–3; *Daniel* v. *Mitchell*, 1 Story, 172; *Warner* v. *Daniels*, 1 Wood. & M., 90; Bispham's Eq., 247, Sec. 191; *Hill* v. *Bush*, 19 Ark. 522; 9 Ala. 662; 30 Me. 263; 4 John. Ch. 566; *Glenn* v. *Statier*, 42 Ia. 110.) Practically, what plaintiff seeks relief from is her ignorance and negligence, against which equity seldom, if ever, relieves. (See cases last cited, and 2 Pom. Eq. Jur., Sec. 839, n. 2, and 856.) If the proof shows anything, it is that the parties have voluntarily made a family settlement or compromise—something favored by equity, and generally undisturbed by it.

(Bispham's Eq., Sec. 189, 243; Kerr, Fraud and Mistake, 434; 2 Pom. Eq. Jur., Sec. 850.)

STRAHAN, J.—The substance of the complaint in this suit is as follows: That on the 5th day of November, 1884, plaintiffs executed and delivered to defendant a quit-claim deed to certain real property, therein described as situate in Baker and Union counties, and that said deed was duly recorded; that it purports on its face to be for and in consideration of one dollar and other valuable considerations paid by said grantee to plaintiffs; that plaintiffs were induced to execute said conveyance by false representations of the defendant, that it was necessary to execute the same to enable the defendant to make a final settlement of her accounts in the estate of Ahira Johnson, deceased, of which the defendant was the administratrix in conjunction with one Thomas Keating; and the further false representation by the defendant that the execution of said conveyance did not affect plaintiff's right in said land so conveyed; that at the time of said conveyance plaintiffs were ignorant of the facts concerning the condition of said estate, and of their rights in the premises; that each of the plaintiffs had full confidence in the truthfulness of said statements of the defendant, who is the mother of the plaintiff Elizabeth Baldock, and relied upon their truthfulness; and in ignorance of their rights, and the falsity of such statements, and the effect of such instrument, they executed the same; that if such statements had not been made, or had the plaintiffs known their rights in the premises, they would not have executed said conveyance; that said representations were false, and the said defendant well knew they were false at the time they were made to plaintiffs. That said representations were untrue in this: that it was not necessary in the settlement of said estate that said conveyance should be executed, as plaintiff (defendant) well knew; that said deed did affect the rights of plaintiffs in this: that one Ahira Johnson was at the time of his death seized in fee of the lands described in said conveyance; that before the execution of said deed the said Ahira Johnson

XIV. OREG.—35.

died intestate in the state of Oregon; that at the time of his death he left surviving him as his only heir, the defendant, who was his wife, and one· Harry A. Johnson, an infant son of the defendant and said Ahira Johnson, deceased; that after said Ahira Johnson's death, and before the execution of said deed, the said Harry A. Johnson died intestate, and left no heirs at law except the defendant, who was his mother, and one Charles A. Herring and the plaintiff Elizabeth Baldock, who were brother and sister of the half blood of said Harry A. Johnson, deceased ; that said plaintiff Elizabeth Baldock was, at the date of the execution of said deed, and is now, entitled to an undivided one-third of said lands in fee; and that said deed purports to convey to the defendant all of the plaintiff's right and interest in said land ; and that the value of said lands at the time of said conveyance was $10,000.

The answer denied the material allegations of the complaint; and upon the issues thus formed a trial was had, which resulted in a decree dismissing the suit, from which the plaintiffs have appealed to this court.

Upon the trial here the following facts were substantially admitted : That Ahira Johnson died intestate in Baker County, Oregon, about the year      , and that at the time of his death he was seized in fee of the real property in controversy.

That previous to his death the said Ahira Johnson had intermarried with the defendant, and that Harry A. Johnson was born of said marriage, and that said Harry A. Johnson died intestate in Baker County, Oregon, about August 7th, 1884.

That said Harry A. Johnson was the only heir at law of said Ahira Johnson, and that said Harry A. left surviving him the plaintiff Elizabeth Baldock, and one Charles Herring, who are the children of the defendant Samantha Johnson by a former marriage, and that they are brother and sister of the half blood of the said Harry A. Johnson.

That Harry A. Johnson was an infant at the time of his death ; was never married, and left surviving no other heirs at law except the said Elizabeth Baldock, Charles Herring, and his mother Samantha Johnson, the defendant.

From the evidence taken in the cause and submitted upon the trial, the court finds:

That on the fifth day of November, 1884, the plaintiff Elizabeth Baldock, without any consideration whatever, made, executed and delivered to the defendant a quit claim deed of all her right, title, interest and estate in the real property in controversy ; which interest was, at the time, of the value of $1,-666.66 ; that at the time of such conveyance the plaintiff Elizabeth was of about the age of seventeen years, and had been married less than one year; and that both of the plaintiffs then resided with the defendant at her home in Baker County.

That for the purpose of inducing the plaintiff Elizabeth to execute and deliver said deed, the defendant represented to her, as well as to her husband Fred Baldock, that she wished them to execute a quit claim deed to her, so as to enable her to get her business out of Mr. Keating's hands, who was, with defendant, administrator of the estate of Ahira Johnson, deceased; and for the purpose of enabling her to manage her own business ; and for the purpose of keeping Mr. Johnson's folks from coming in and taking her property.

That defendant also represented to said Elizabeth before the execution of said deed, and for the purpose of inducing her to sign the same, that she, the said plaintiff, had no interest in said real property, and that it all belonged to the defendant ; and that the plaintiff did not know when she signed said deed that she had any interest in said real property, or that she was conveying it away ; but that she obeyed the commands and requests of her mother, the defendant, as to the execution of said deed, without any knowledge as to its legal effect, or the purpose the defendant had in procuring its execution.

The defendant Samantha has not in any way attempted to explain her purpose in procuring said deed, or by any evidence sought to justify it.   So far as appears, it was a deliberate attempt on her part to obtain plaintiff's interest in this land without paying anything whatever for it.   Her claim that she had offered or agreed to give the plaintiff a span of horses cannot alter the case.   The highest value any witness places on them

is $160, and if such an agreement had been made it could not be allowed to stand under the circumstances here disclosed. The making of such an agreement would be fraudulent as between the parties.

It is not quite clear whether the *gravamen* of this suit is *fraud* or *mistake*. The complaint contains some facts which are proper and material under either view; but inasmuch as no objection to the pleading appears to have been made in the court below, it is not necessary to stop to consider it, if it contains facts which would authorize a decree.

It is difficult to perceive upon what principle of law the decree in this case can be sustained. The plaintiff has parted with her property, and has received nothing whatever in return. It is not a case of inadequate consideration, but one where a consideration is totally wanting. The acknowledgement, however, of a consideration in the deed, would be sufficient in law to sustain it, if it were not open to be questioned on other grounds ; but where a party acts under a total misconception of his legal rights, or the extent of his interest or estate in the thing granted, or where his confidence is imposed upon to his injury, and in other like cases, there can be no doubt that lack of an adequate consideration must have a material bearing on the question whether the deed ought to stand or not.

It is contended, on the part of the respondent, that the plaintiff's claim to relief is founded on a mistake of law, and that, therefore, she is not entitled to relief. It may be conceded, generally, that courts of equity do not ordinarily grant relief where the only ground upon which such relief is sought is a mistake of law. It is said that every person is presumed to know the law, and that one will not be permitted to allege his ignorance thereof as a ground of relief in equity; but many of the cases come so near the border line between mistakes of law and mistakes of fact, that the point of demarcation is not always apparent; and there can be no doubt that, owing to the hardships growing out of an inflexible and unbending application of this rule, some apparent exceptions have been admit-,

ted.   But it is not conceded that this case falls within that principle.   Under the particular circumstances of this case, the plaintiff's mistake is to be regarded as one of fact.   Mr. Pomeroy states the rule thus :  " Whenever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property, or contract, or personal status, and enters into some transaction, the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analagous to, if not identical with, a mistake of fact." (2 Pomeroy's Eq. Juris., Sec. 849.)

Now in this case it is apparent that the plaintiff was totally ignorant of her interest in the real property conveyed.   After a very careful perusal of the evidence, I am satisfied the plaintiff had no knowledge whatever touching her interest in said real property, when she made the deed in question.   But I do not place this decision on this point alone.   The defendant's language and  conduct towards the plaintiff respecting this matter had a direct tendency to overreach and mislead her. In none of the various conversations had between the plaintiff Elizabeth and the defendant, touching the execution of this deed, did the defendant ever intimate that her object in procuring it was to acquire plaintiff's interest in the property.   On the contrary, she constantly maintained that the plaintiff had no interest ; that the land all belonged to her ; and even in her deposition taken in this case she asserts the same thing many times.   Not only so, but when she was soliciting the plaintiff to execute the deed, she gave as a reason therefor something that was not true in fact; and if not actually designed by her to be misleading, its effect was so.

But, in addition to this, the relation of parent and child, while its influence continues, is a fiduciary one, and the law applicable to that relation must be applied here.   " A child is presumed to be under the exercise of parental influence as long as the dominion of the parent lasts.   Whilst that dominion

lasts, it lies on the parent maintaining the gift to disprove the exercise of parental influence, by showing that the child had independent advice, or in some other way. When the parental influence is disproved, or that influence has ceased, a gift from a child stands on the same footing as any other gift; and the question to be determined is, whether there was a deliberate, unbiased intention on the part of the child to give to the parent." (2 Pomeroy's Eq. Juris., Sec. 962.) A reference to some of the adjudged cases will tend to further elucidate the principle.

In *Miller* v. *Simmonds*, 5 Mo. App. 33, it is said : "But if all the pecuniary advantage be on the side of the grantee, the burden is strongly on him to divest the transaction of every element of influence over the grantor's mind, growing out of the former relations between the parties."

In *Archer* v. *Hudson*, 7 Beav. 557, Lord Langdale said : "If there be a pecuniary transaction between parent and child, just after the child attains the age of twenty-one years, and prior to what may be called complete emancipation, without any benefit moving to the child, the presumption is that undue influence has been exercised to procure that liberality on the part of the child. And it is the business of the party who endeavors to maintain such a transaction, to show that the presumption is adequately rebutted."

In *Bergen* v. *Udall*, 31 Barb. 9, the court said : "A transaction like the present, in which a daughter, immediately upon her arrival at age, makes a voluntary conveyance for the benefit of her father, will be examined by the court with the most jealous scrutiny and suspicion. The person relying upon it must show affirmatively, not only that the person who made it understood its nature and effect, and executed it voluntarily, but that such will and intention was not in any degree the result of misrepresentation or mistake, and was not induced by the exertion, for selfish purposes, and for his own exclusive benefit, of the influence or control which he possessed, as a father, over his daughter."

So, also, in *Ross* v. *Ross*, 6 Hun, 80, it is said : "A court

of equity interposes its benign jurisdiction to set aside instruments executed between persons in the relation of parent and child, guardian and ward, physician and patient, solicitor and client, and in various other relations in which one party is so situated as to exercise a controlling influence over the will and conduct and interests of another ; and this power will be exercised, unless the interest is satisfactorily shown to be fair and free from improper influence by the party seeking its benefit, the burden of which rests on him." And the like rule is declared in *Rankin* v. *Patton*, 65 Mo. 378.

But it is useless to multiply authorities. The principle is elementary and universal in this country, and its application disposes of this case. The defendant, by importunity and misrepresentation, obtained the deed in question without consideration, and while the plaintiff was ignorant of her rights ; and the same cannot, therefore, be allowed to stand. The defendant will, therefore, be required to convey to the plaintiff, Elizabeth Baldock, one equal undivided one-third of the real property described in the complaint, by deed properly executed, within thirty days after the entry of this decree in the court below ; and in default of such conveyance, then that this decree shall operate to convey the same to the said Elizabeth, and stand in lieu of such deed ; and that the proper decree be entered here to carry said decision into effect, and that appellants recover their costs.