Argued 25 July, decided 22 October, 1907.

**JOHNSON *v.* SAVAGE.**

91 Pac. 1082.

EXECUTORS AND ADMINISTRATORS—EXPENSES.

1. If a husband's curtesy estate in the property of his deceased wife gives him possession to the exclusion of the administrator, the expenses of fencing the property, insurance on a building thereon, and other expenses for the benefit of the husband, are not chargeable against the estate.

FRAUD—REPRESENTATIONS—RELIANCE—FIDUCIARY RELATIONS.

2. The rule that a person is guilty of negligence in relying on statements or representations of another as a basis of a contract or transaction, does not apply to parties occupying the relation of trust or confidence, such as parent and child, or guardian and ward.

ADMINISTRATORS—FINAL ACCOUNT—VACATION—GROUND.

3. Where a husband was appointed administrator of his deceased wife's estate and fraudulently induced the heirs to advance their money to maintain the same, to acquiesce in the final account without examination, and withhold their claims against the estate, the heirs were entitled to have the final account vacated and the estate reopened.

From Marion: WILLIAM GALLOWAY, Judge.

Suit by Annie M. Johnson against O. G. Savage, to vacate the final settlement of an estate. From a decree in favor of plaintiff, the defendant appeals.           AFFIRMED.

For appellant there was a brief and oral arguments by *Mr. Carey F. Martin* and *Mr. George G. Bingham.*

For respondent there was a brief and oral arguments by *Mr. George E. Chamberlain* and *Mr. Myron E. Pogue.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. Loretta E. Savage died intestate on the 12th day of December, 1902, leaving the defendant, her husband, and the plaintiffs, her daughters by a former marriage, to survive her. At the time of her death she owned and possessed real estate in Marion County valued at about $17,000, but no personal property, except about $400 worth of sheep and goats. A portion of said real estate was subject to a mortgage of $3,000 in favor of the State Land Board. Decedent was also indebted to the Capital National Bank on a promissory note for $1,000, and plaintiffs claim that she was indebted to them in the sum of

$1,296 advanced by them to her in her lifetime.  On December 29, 1902, defendant was duly appointed administrator of the estate.   At the time of the said administration plaintiffs were young ladies, having just arrived at their majority, and, being inexperienced in business affairs, had theretofore wholly depended on defendant and their mother in such matters, and had implicit confidence in defendant.  At that time he represented to them that, in order to avoid sacrificing the lands of the estate for payment of decedent's aforesaid debts and expense of administration, and to preserve their interest in said lands, it would be necessary for them to pay such expenses and debts from their own property.   Plaintiffs also claim that he advised them that, as soon as the estate was closed, he would release said real estate to them, free from his claim of curtesy therein; that thereafter, by his advice, plaintiffs converted property of their own into cash and deposited the same, to the amount of about $2,200, in the Capital National Bank, and gave defendant authority to check against it for payment of said $1,000 note, held by the bank against the estate; that defendant did draw from said account sufficient money to pay said note, $1,031.30, and $436.90 additional.   The administration of the estate was closed September 8, 1903.   Defendant, in his final account of the estate proceedings, does not give a statement of the amount of debts against the estate, nor of the source from which he received the money to pay them, but in said account states that "such claims as do not appear in above final account have been paid by this administrator out of his individual funds, and no claim therefor is made against the estate," thus giving plaintiffs no credit for the amount of their funds applied thereto.   This suit was commenced March 14, 1905, for the purpose of opening the said decree of final settlement of said estate, permitting plaintiffs to present their claim against said estate for the advancement of $1,296 to decedent, and requiring that defendant account for rents and profits of said lands; that he return to plaintiffs $1,500, used by him in

settling said estate debts, and that he apply the rents and
.profits of the land in payment of the $3,000 mortgage until the
same is paid. An answer was filed to this complaint, in which
defendant claims the realty as tenant by curtesy free from any
liabilities for debts of the estate. A reply denying these alle-
gations was filed, and at the trial much testimony was taken
upon the issues raised, from which findings were made by the
court in favor of plaintiffs, and a decree rendered thereon.

The principle question for our consideration is whether de-
fendant's conduct in the management of the estate, in obtaining
the plaintiff's money, and in the final settlement of the estate,
as against plaintiffs, was such as to constitute fraud upon them.
The final account is a very loose and inaccurate report. It
should show all sales of personal property, to whom sold, and
the price. Property not sold should be listed and shown to be
on hand for distribution. If sheep were killed by dogs, it should
be shown by a statement of facts in the report independent of
the charge in the statement of the account. It should also
show the estate debts, to whom due, and how paid. The evi-
dence in this case disclosed that $118.75 was expended by the
defendant for fencing and for insurance on the hop house, paid
from the money of plaintiffs, and this is not mentioned in the
report. If defendant's curtesy estate gives him possession to
the exclusion of the administrator, as he claims in this suit,
then such items are not chargeable to the estate at all, but must
be paid by the tenant, which is also true as to the expense of
drawing the lease, charged against the estate at $7.50, which
was for defendant's sole benefit.

2. In the final account, the administrator also takes credit
for the "present value of the estate," $16,961.50, viz., $157.50,
increased value of the lands over the appraisement, evidently
done to make his account balance, and the error for that
amount is in his favor. Nor does he account for the whole of
the personal property, nor the increase thereof. These errors
could not be taken advantage of now simply as errors in the

account, but it appears that, on account of the fiduciary relations between the defendant and plaintiffs and his efforts to lull them into inaction, and thus prevent them from discovering these errors, it operates as a fraud upon them. It is also clear that he induced the plaintiffs to advance to him $1,500 with which to pay debts of the estate and other expenses of administration, with the understanding that upon the close of the administration they would come into possession of the real estate free from his curtesy estate. This is corroborated by his own testimony at page 101 of the transcript, where he says: "And she (Mrs. Reed) spoke about it (a deed from defendant to plaintiffs) and wanted to know if I didn't think I had better deed the property over to them. I told her her sister had gone to California, and it would be time enough to talk about it when she came back"—showing that he was encouraging them in the belief that they were to have the land.

3. Upon the same influence and inducement and the fiduciary relations existing between them, and plaintiffs' confidence in defendant's statement that it was all right, they were led to allow the final account to be settled without examination thereof, and without consulting any other adviser in regard thereto. At the time of the death of the decedent, plaintiffs were members of the family and household of defendant and decedent, and after the death of the mother they continued members of the family of defendant until the settlement of the estate, except that they were each absent a short time. At all times the most friendly relations continued; plaintiffs evidently leaving all business relating to the estate entirely to defendant. They acted upon his advice or suggestion in all matters relating thereto, and were ignorant of the legal effect of putting their money into the estate and of their rights therein.

The rule that a person is guilty of negligence in relying upon statements or representations of another as a basis of a contract or transaction does not apply to parties occupying a relation of trust or confidence, such as parent and child; or guardian and

ward: 14 Am. & Eng. Enc. Law (2 ed.), 122, 172; *Baldock v. Johnson,* 14 Or. 542 (13 Pac. 434). By reason of these conditions, plaintiffs have been induced to advance their money to the estate, to acquiesce in the final account without examination, and to withhold their claims against the estate, and have thus been deprived of their rights in regard thereto, resulting in a fraud upon them. Therefore we think the decree of the county court settling the final account should be vacated, and the estate reopened, and plaintiffs given an opportunity to present their claims against the same, and such other proceedings as may be proper in the administration of the estate. As to whether the rents of the realty during the administration should go to the administrator, we deem it unnecessary to decide now, and therefore indicate no opinion upon that question.

The decree of the lower court therefore is affirmed in so far as it directs that the estate be reopened and plaintiffs given a hearing therein.                                        AFFIRMED.