Argued October 31, reversed December 30, 1955, petition
for rehearing denied March 1, 1956

## SHIPE ᴇᴛ ᴀʟ *v.* HILLMAN
292 P. 2d 123

558

*Harold Banta* and *A. S. Grant,* Baker, argued the cause for the appellant. With them on the brief were Grant & Fuchs, Gene C. Rose, and Silven & Horton, all of Baker.

*Roy F. Kilpatrick,* Canyon City, argued the cause for the respondent. With him on the brief were Rob't. D. Lytle and W. F. Schroeder of Canyon City and Vale.

Before WARNER, Chief Justice, TOOZE, BRAND and PERRY, Justices.

WARNER, C. J.

This is a suit to establish a trust on real property situate in Grant, Harney, and Crook counties in Oregon, resulting in a decree declaring the defendant as holding title to said real property as trustee for the use and benefit of herself and the parties Plaintiff. It is from this decree that the defendant appeals.

The defendant-appellant, Bessie K. Hillman (hereinafter called "Bessie"), is a daughter of Clarence Dayton Hillman, deceased (hereinafter called "Hillman, Sr."). The plaintiffs-respondents are children or grandchildren of the decedent, and together with the appellant constitute all of Hillman, Sr.'s heirs.

Bessie's title was derived in 1922 through four separate deeds from her father to her as grantee, absolute in form. Each contained the usual recital of consideration and had customary habendum clauses.

This litigation has its genesis in the eccentric business methods of Hillman, Sr. He was a "boomer", with a firm belief that any land in the west had value

to someone, and was, as described in the briefs, "a most amazing and colorful character". During his lifetime he had extensive land holdings in the states of Washington, Oregon, Nevada, California, and also in Canada. At one time he was the largest landholder in the state of Washington. It is said that at the peak of his operations Hillman, Sr. amassed a fortune of nearly $20,000,000. However, when he died in 1935 these values, as disclosed by the probate record had been reduced to $235,000. There is nothing in the record before us which remotely suggests that Hillman, Sr. was insolvent at any time, or was threatened with insolvency when he conveyed the instant property to Bessie.

Aside from exhibiting a domineering and patriarchal control over his sizeable family and his employees, he handled his various property holdings in a most unorthodox manner. We shall not attempt to enumerate his many departures from the conventional ways of conducting business, except to note here the one which seems to give greatest comfort to the plaintiffs-respondents as a basis for their claim. The business oddity to which we refer was Hillman, Sr.'s penchant, when purchasing land, for placing his titles in the names of others than himself—more frequently in the names of his children, even while in their minority, or in the names of his employees, and sometimes even employing fictitious names for grantees. It was a peculiarity which has no convincing record explanation.

The deeds to the property in controversy have this more or less unique distinction: In all of the deeds wherein the defendant-appellant was grantee, her father and his wife were grantors; whereas, when the other relatives or employees of Hillman, Sr. were

grantees we are told that in most instances the grantors were parties from whom Hillman, Sr. purchased the property.

It is the position of plaintiff that Hillman, Sr. placed titles in various persons for his convenience, confident that he could on demand, as he always had in the past, control the grantees of his selection, and by reason thereof compel them to execute any conveyance that he might require from time to time.

The only allegation bearing directly upon the alleged trust relationship is found in paragraph V of the Amended Complaint, and reads:

"That upon her attaining her majority in the year 1922 her Father placed legal title to many thousands of acres of his lands in Oregon and elsewhere in her name to facilitate his handling of it. That she took said naked title upon the understanding that she was holding it in trust for her Father. That the beneficial interest in said lands remained and at all times since has been in her Father and his lawful heirs. That she at no time paid or surrendered anything in exchange for said conveyances."

It will be noted that the respondents make no effort to suggest what kind of a trust was the product of the dealing had between Hillman, Sr. and his daughter Bessie, i.e., whether an express, resulting, or constructive trust.

Although the Court below may not have been under any duty to define the particular kind of a trust it ultimately found as existent, we cannot here avoid so doing in our effort to discover if Bessie, in fact, holds title as a trustee; and, if Bessie is a trustee, then to determine what are the rules of law and evidence

giving support to the particular kind of trust from whence her trusteeship arises.

■ "A trust is an equitable obligation, either express or implied, resting upon a person by reason of a confidence reposed in him to apply or deal with property for the benefit of some other person, or for the benefit of himself and another or others, according to such confidence, * * *", *Templeton v. Bockler,* 73 Or 494, 506, 144 P 405.

■ As a general rule trusts are divided into two principal classifications: express trusts, and implied trusts. The latter classification, sometimes referred to as trust by operation of law, has been further subdivided into: (a) resulting trusts, and (b) constructive trusts. 1 Bogert, Law of Trusts and Trustees, § 1, p 7; 89 CJS 722, Trusts, § 10; 54 Am Jur 22, Trusts, § 5. Some other authors have made finer distinctions and have stated that four types of trust exist—express, implied, constructive and resulting. Both Professors Lewin and Perry define trusts as being of four types: Lewin, Trusts, (14th ed), 16, 82; Perry on Trusts, (7th ed), § 112. However, Professor Bogert, in his text, Bogert on Trusts, (2d ed), § 20, states, and we think correctly, that the prevailing rule in this country is contrary, and that implied trusts include resulting and constructive.

Notwithstanding the failure of any attempt by pleading or decree to demonstrate the type of trust, if any, which emerged from the transactions had between the senior Hillman and his daughter, the circuit court described the incident ligitation as "* * * a suit to impress a constructive trust upon certain real property * * *." Later in its opinion the Court holds in essence that there was no constructive trust "* * * because there wasn't any agreement." Indeed, the

circuit judge concluded his opinion with the statement: "I am not going to decide in this case now whether or not this amounts to a resulting or constructive trust."

Express trusts are intentionally created by a direct and positive act of the settlor by some writing, deed, will, or declaration. In Oregon an express trust can come into existence only by writings subscribed by the party creating the trust, or his lawful agent, and executed with such formality as may be required by law. ORS 93.020. The law is well settled in this state that parol evidence is not admissible to establish an express trust. *Bowns v. Bowns,* 184 Or 603, 200, P2d 586; *Hornbeck v. Crawford* 130 Or 230, 279 P 870; *Howard v. Foskett* 96 Or 446, 189 P 396. It is unnecessary, therefore, to here distinguish between an express trust and an implied trust in view of the fact that there is no contention made that the transactions had between Hillman, Sr. and his daughter were the product of an express trust.

Therefore, if a trust can be culled from the deeds from Hillman, Sr. to Bessie, it must be implied, and if implied, it must be either a resulting or a constructive trust. As was said by Mr. Justice WOLVERTON in *Barger v. Barger,* 30 Or 268, 47 P 702, "* * * there is a marked distinction between the two * * *"; and we therefore now turn to examine the record in an attempt to ascertain whether or not the lands in the instant matter come within either of the two implied trust classifications, or are owned by Bessie in fee simple.

A resulting trust has been broadly defined as "* * * a trust which is raised or created by the act or construction of law, but in its more restricted sense it is a trust raised by implications of law and presumed always to have been contemplated by the parties, the

intention as to which is to be found in the nature of their transaction, but not expressed in the deed or instrument of conveyance.'' 89 CJS 725, Trusts, § 14; Restatement, Trusts § 455. A resulting trust arises where property is transferred under circumstances which give rise to an inference that the person who makes the transfer, or causes it to be made, does not intend the transferee to take the beneficial interest in the property * * *.'' *Moses v. Moses* 140 NJ Eq 575, 53 A2 805, 173 ALR 273, 276.

■ In Oregon and elsewhere this is exemplified where property is purchased with the money of another, although the title is not taken in such another's name. *Holohan v. McCarthy,* 130 OR 577, 588, 281 P 178; *Chance v. Graham* 76 Or 199, 207, 148 P 63; *Barger v. Barger,* supra, *Unterkircher v. Unterkircher,* 183 Or 583, 591, 195 P2d 178.

But when the money is furnished by and even expended for the alleged beneficiary, the evidence must be clear, unequivocal and convincing. *Holohan v. McCarthy* (130 Or 588), and the same is true of constructive trusts, *Johnston v. McKean,* 177 Or 556, 572, 162 P2d 820, and cases there cited.

In the case at bar we are confronted with a deed, absolute on its face, which conveyed the lands in question to the defendant. This is not a case where the land was conveyed by a third person to defendant after her father paid the consideration. Rather, it is a situation wherein a father conveyed to his daughter property which he had previously owned.

■ 'Where the owner of the property gratuitously transfers it to another without declaring any trust, a resulting trust does not arise. At common law, however, it was held that where the owner of land enfeoffed or otherwise transferred it to another, the other held the

land upon a resulting use for the transferor. The courts took the view that where the conveyance of land was gratuitous the inference was that the transferee was not intended to have the beneficial interest in the land, but that the beneficial interest was retained by the transferor. *This inference is no longer drawn, and a resulting trust does not arise where property is gratuitously transferred by the owner without declaring any trust.* 3 Scott, Law of Trusts, § 404.1 p 2164; Bogert, Law of Trusts, 3d ed, § 73 p 304.

If a resulting trust arises at all it must be at the time of the conveyance, for these are obligations imposed by the law itself in spite of the actions of the parties themselves. The law is constantly operant, and without delay attaches the consequence to be derived from the acts of the parties. So far as such trusts are concerned, they are not created nor established by subsequent acts of any of the participants. *Chance v. Graham,* 76 Or 199, 148 p 63.

We are persuaded that no resulting trust was derived from the transaction had between Hillman, Sr. and Bessie with reference to the instant property.

"A constructive trust arises where a conveyance is induced on the agreement of a fiduciary or confident to hold in trust for a reconveyance or other purpose, where the fiduciary or confidential relationship is one upon which the grantor justifiably can and does rely, and where the agreement is breached, since the breach of the agreement is an abuse of the confidence and it is not necessary to establish such a trust to show fraud or intent not to perform the agreement when it was made." 54 Am Jur Trusts, § 233, p 178. The foregoing definition is cited with approval in *Bowns v. Bowns,* 184 Or 603, 614, 200 P2d 586; *Hanscom v. Irwin,* 186 Or 541, 564, 208 P2d 330.

It is apparently because of their failure to spell out a resulting trust that respondents attempt to give the alleged trust the character and quality of a constructive trust. This they seek to do solely upon the authority of *Hanscom v. Irwin*, 186 Or 541; and *Sinclair v. Purdy*, 235 NY 245, 139 NE 255 (cited by Mr. Justice Lusk in Hanscom). Although they do not expressly repudiate the concept of a resulting trust we feel that the stress which they hopefully place upon the Hanscom case, plus the obvious absence of any factual circumstances to sustain a resulting trust warrant us in saying that if they cannot demonstrate that the deed transactions between Bessie Hillman and her father created a constructive trust, then we must hold that the Oregon property conveyed by Hillman, Sr. in 1922 to his daughter Bessie was in the nature of gift, and that she holds the title in fee simple.

In so doing the respondents again press upon us the same legal question raised in *Hanscom v. Irwin*, 186 Or 541, 563, i.e., whether a court of equity may in any circumstance declare a constructive trust where property is transferred to hold for the transferor, and upon the faith of the transferee's *oral promise* given in good faith, to reconvey, but which the transferee subsequently repudiates. The answer to this query was made in clear, positive terms in *Hanscom v. Irwin*, supra, but the facts here do not bring the respondents within the rule of that case.

In Hanscom, supra, the plaintiff-transferor had conveyed his interest in certain farm lands to his wife, in trust, predicated upon her oral promise to reconvey the premises to him on demand. Subsequently, and after divorce of the Hanscoms and remarriage of Mrs. Hanscom, her former husband demanded that she deed the property to their daughter, June. It was then that

Mrs. Hanscom denied the oral trust agreement and refused to convey the property as requested by her former husband. This Court found clear and convincing evidence that such an oral agreement had been made at the time of the conveyance, and held that plaintiff's previous wife (subsequently Mrs. Irwin) took and held title as trustee for the use and benefit of Hanscom.

In so holding, Mr. Justice LUSK noted that there was a division of authority, with some courts holding that the enforcement of an oral trust was in violation of the Statute of Frauds (ORS 41.580); and in other jurisdictions it was held that when a fiduciary or confidential relationship subsisted between the parties to the deed it need not be shown that there was fraud, duress, undue influence or the like, at the inception of the transaction, but that a constructive trust arose where the confidential relation is abused by the refusal of the transferee to carry out his agreement. (186 Or 563). Justice LUSK, in the Hanscom case, then reviews the earlier decisions of this Court wherein the question has been presented and discussed, as well as the rule as stated in American Jurisprudence and Restatement of Trusts. He concludes: (186 Or 566) "We therefore adopt as the law of this state *in this class of cases* the rule which we have quoted from the Restatement. The rule thus adopted reads:

"(1) Where the owner of an interest in land transfers it inter vivos to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, and the transferee refused to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if  *  *  *

"(b) the transferee at the time of the transfer was in a confidential relation to the transferor  *  *  *."

In the comment (1,b) it is said:

"* * * this is true even though at the time of the transfer the transferee intended to perform the oral trust, and even though he was not guilty of undue influence or other abuse of his confidential relation to the transferor in procuring the transfer. Such a confidential relation exists not only where there is a fiduciary relation such as exists between attorney and client, trustee and beneficiary, guardian and ward, and the like, but also where, because of family relationship or otherwise, the transferor is in fact accustomed to be guided by the judgment of the transferee or is justified in placing confidence in the belief that the transferee will act in the interest of the transferor * * *" (186 Or 565.)

The respondents not only seek comfort in the Hanscom case, but also in the words of Mr. Justice Cardozo, wherein the distinguished jurist wrote: (*Sinclair v. Purdy* 235 NY 245, 139 NE 255) "Though a promise in words was lacking, the whole transaction, it might be found, was 'instinct with an obligation' imperfectly expressed".

■ To focus the differences between the instant matter and the rule adopted in Hanscom, we summarize the essentials as found in the Restatement. They are:

1. The conveyance of land to another in trust with no writing, but only an oral agreement, to evidence the intent of the transferor to create a trust;
2. A confidential relationship existing between transferor and transferee at the time of the conveyance; and
3. A refusal of the transferee to perform the trust.

■ The respondents' case falls far short of bringing the appellant, Bessie K. Hillman, within the

reach of the rule from Hanscom. The second element above, respecting a confidential relationship, applies insofar as the transferor and transferee here are respectively father and daughter. *Baldock v. Johnson,* 14 Or 542, 549, 13 P 434; *Johnson v. Savage,* 50 Or 294, 297, 91 P 1082; *Meek v. Meek,* 79 Or 579, 591, 156 P 200; 2 Pomeroy's Equity Jurisprudence, § 962(a).

However, in the absence of evidence to the contrary, where there is a deed from the father to the daughter the presumption is that the conveyance was intended as an advancement, or settlement, or gift, and not in trust for the person furnishing the money. *Dahl v. Simonsen,* 157 Or 238, 243, 70 P2d 49; and cases there cited. Restatement, Trusts § 442, p 1355. Here we find no evidence of any intent on the transferor's part, known or unknown to the grantee daughter at the time of the giving of the deeds, that she was to reconvey on her father's demand, as was clear in the Hanscom matter.

It is also true that the third element, that is, refusal to perform the trust, is present here, if it can be said that there is evidence that the deeds were delivered by Hillman, Sr. to his daughter Bessie, with an intent that she hold the title in trust for the use and benefit of her father, the transferor, his heirs and assigns. In this respect, and as above noticed, the record here is absolutely silent. This was likewise the conclusion of the trial judge, who in his opinion said: "Bessie Hillman did not breach any agreement, in my opinion, because there wasn't any agreement, * * *"; to which we add: nor any evident intent on the part of grantor that she hold as trustee. This condition of the record is further recognized in part by the following statement from respondents' brief, where they say: "* * * it is true that an exact agreement on Bessie's part is not

spelled out, * * *'', but add, by way of mitigating the impact of that concession, ''* * * it is equally true from the whole record that the father knew that he could have the naked legal title back whenever it suited his purpose, or that he could use a blank deed * * *''. Such a unilateral belief may have been nursed in the mind of the father; if so, it was only a hope or an expectation, derived not from any express or implied agreement, that his daughter held title as trustee and would convey on his demand, but rather conjured from past experience with others of his family and employees who apparently executed deeds to properties standing in their names whenever Hillman, Sr. cracked the whip, so to speak. But here there is no solid substance to support such confident hope on the part of the father. We find nothing in which in the terms of the rule subscribed to in the Hanscom case can be said as: ''* * * properly evidencing the intention (of Hillman, Sr. as transferor) to create a trust * * *''. (186 Or 565.)

■ The trust which the respondents seek to establish here must arise, if it arises at all, by implication or operation of law, and it must be derived only from conditions existing at the time of the conveyance and cannot be supplied from circumstances established by subsequent events. *Chance v. Graham,* 76 Or 199, 207; *Barger v. Barger,* 30 Or 268, 47 P 702; 54 Am Jur, Trusts, § 204 p 159. Here the facts relied upon the respondents are not conditions existing at the time of the conveyance, nor have they any particular connection with the making of the conveyance. They are in the main a collection of eccentricities and strange ways and customs that solely characterized the manner of doing business by respondents' ancestor. But none of Hillman, Sr.'s idiosyncrasies is in any way directly related to the deeds he gave to his daughter in 1922; and

if so related they are not of a character legally warranting impressing a trust upon her Oregon real property.

The trial court should not have permitted the plaintiffs to attack this deed upon both theories of implied trust, that is, resulting or constructive. It is clear that in the absence of fraud, accident or mistake, parol evidence cannot be received to prove that a deed absolute on its face was given in trust for the benefit of the grantor. This would seem to be sufficient in and of itself to rebut any assertion by the plaintiffs that the Hillman deeds to Bessie gave rise to a resulting trust. Nor have the plaintiffs shown any acts of the defendant which would justify a finding of a constructive trust. There is no allegation to fraud, duress, mistake, undue influence, breach of fiduciary relationship, or for that matter any set of circumstances which would warrant such a finding.

Rather, we find much evidence to support the defendant's assertion that she is the owner of the land in fee, free and clear of any outstanding equities in her relatives. The law has created a presumption in her favor that this voluntary and gratuitous conveyance was a gift. No consideration was necessary to perfect this gift, and parol evidence is inadmissable to contradict the deed. *Dahl v. Simonsen,* 157 Or 238, 243, 70 P2d 49; *DeRoboam v. Schmidtlin,* 50 Or 388, 392, 90 P 1082. Her father subsequently reaffirmed the fact that title was in the defendant when in 1926 he wrote to Mr. J. T. L. Campbell, invoking his aid in a sale of some of the instant property, then telling Mr. Campbell that the lands belonged to her daughter Bessie, who needed money badly. Perhaps the law in this matter is not as flexible as a court of equity might find desirable to work out absolute justice among the parties; neverthe-

less, the security of legal titles to real property is a matter of great public concern, and courts will not impose either a resulting or a constructive trust upon such titles by parol unless the complainant sustains the burden of proof or existance of a trustee relationship by strong, clear and convincing evidence. *Hughes v. Helzer,* 182 Or 205, 185 P2d 537, 3 Bogert, Trusts and Trustees, § 472, p 15. This Court has said that the proof must be of "* * * extraordinary persuasiveness * * *." *Hughes v. Helzer,* supra. Nothing short of certain definite and convincing proof will justify the Court in divesting a man of his title to lands when it is evidenced by a regular deed, and putting it in another. *Parker v. Newitt,* 18 Or 274, 277, 23 P 246.

We are therefore compelled to hold that in view of the standard of "extraordinary persuasiveness" the plaintiffs have failed to establish an equitable right in themselves, and that the judgment of the lower court should be reversed. No costs nor disbursements will be allowed to any of the parties.