Argued September 29, affirmed December 18, 1978

# McJUNKIN, *Appellant,*
## *v.*
# McJUNKIN et al, *Respondents.*
## (No. 47408, CA 10450)

588 P2d 61

Gregory L. Decker, Albany, argued the cause for appellant. On the briefs were Rick McCormick and Emmons, Kyle, Kropp & Kryger, Albany.

John A. Boock, Albany, argued the cause for respondents. With him on the brief was Boock & Boock, Albany.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

This case involves a claim by plaintiff to a one-half interest in certain real property based on the alternative theories of resulting trust or constructive trust. The court ruled plaintiff had failed to establish a right in the property under either theory.

The property involved was purchased jointly in 1958 by defendant Luella McJunkin and her daughter, defendant Lurie McCombs. Defendant David McCombs is Lurie McCombs' former husband. All three defendants lived together in the residence on the property. Plaintiff is the son of Luella McJunkin and the brother of Lurie McCombs. In 1963 he was severely injured in an industrial accident. As a result he was partially paralyzed and confined to a wheelchair and was receiving worker's compensation. From 1963 to 1968 he spent most of the time in a hospital. During periodic releases of varying duration he lived with defendants. Plaintiff's children resided with and were cared for by Luella McJunkin until 1968.

In 1968 Lurie McCombs decided to purchase a home and needed her equity from the residence held jointly with her mother for the down payment. She testified she asked her mother to borrow sufficient money from plaintiff to buy her interest in the property. Luella McJunkin testified she went to plaintiff in the hospital to obtain the $6,100 necessary for the purchase. Plaintiff gave her a check for part of the funds and instructed her to withdraw sufficient money from his savings account to complete the purchase.

Plaintiff testified he was approached by another sister who asked him to purchase Lurie McCombs' interest in the property so their mother would have a place to live. He stated he intended that the money given to his mother be used to purchase an interest in the property for his benefit. He also stated he never discussed a loan with anyone or intended the money to be a loan to his mother.

[ 569 ]

The money was paid to the McCombs and a deed was made by them to Luella McJunkin as the sole grantee. Subsequently, in the summer of 1968 the house was remodeled with funds provided by the State Accident Insurance Fund to accommodate plaintiff's disability. He was released from the hospital and moved into the residence with his mother. Plaintiff returned to the hospital in 1972, where he remained until 1975. During the time he lived in the residence, plaintiff testified, he shared living expenses with his mother including the real property taxes. Luella McJunkin disputed that statement and testified she paid most of the expenses and taxes.

In the spring of 1975, plaintiff's son, who was on leave from the military, needed a place for his wife and daughter to stay when he returned to his duty station. Plaintiff suggested he move into the house in which plaintiff assumed he owned a one-half interest. Luella McJunkin refused to allow plaintiff's daughter-in-law and granddaughter to move into the house because she did not want to take care of them. A dispute arose over this incident, and Mrs. McJunkin consulted an attorney.

On April- 23, 1975, the attorney wrote a letter to plaintiff which stated in part:

> "I have reviewed the deed thoroughly and find that it is in your mother's name only and while you are always welcome to visit her you cannot stay in the home."

Plaintiff testified that was the first time he became aware the deed did not list him as a co-owner of the property. Following subsequent conferences with Mrs. McJunkin the attorney wrote a letter to plaintiff's counsel, which stated in part:

> "I have talked to Mrs. McJunkin and apparently there is no argument that Mr. McJunkin, her son, bought her daughter's one-half interest in the property.
> * * * *"

Mrs. McJunkin's attorney, who was not the same one representing her in this proceeding, testified he

had no independent recollection of his consultations with her nor any recollection of the basis for writing the letters. He confirmed, from a review of his file, that she had been in his office and that he had written the letters. He concluded he must have been authorized to make the statements in the letters because as an attorney he would not otherwise have done so. Mrs. McJunkin testified she had not authorized the statement in the letters.

Following further conversation with plaintiff's attorney, Mrs. McJunkin's counsel wrote the following letter to her:

"I have talked to the attorney again for your son and he has asked that a deed be provided to your son showing his one-half interest in the house. If you will agree, your son's attorney can provide that deed and send it to me and then you can come in and sign."

She apparently did not agree and plaintiff initiated this law suit.

■ Plaintiff first contends the evidence supports his entitlement to the property based on a theory of constructive trust. In *Shipe et al v. Hillman,* 206 Or 556, 292 P2d 123 (1955), the Supreme Court summarized the elements of constructive trust relating to a conveyance of land as follows:

"1. The conveyance of land to another in trust with no writing, but only an oral agreement, to evidence the intent of the transferor to create a trust;

"2. A confidential relationship existing between transferor and transferee at the time of the conveyance; and

"3. A refusal of the transferee to perform the trust." 206 Or at 568.

*See also Marston v. Myers et ux,* 217 Or 498, 342 P2d 1111 (1959). One critical inquiry therefore is whether the evidence establishes that at the time plaintiff gave the money to Luella McJunkin there was an oral

agreement that the money be used for his benefit.[1] The "agreement" may be express or fairly implied from the circumstances surrounding the transaction. *See Belton v. Buesing,* 240 Or 399, 402 P2d 98 (1965).

The central factual conflict in this case is whether the money was transferred to Mrs. McJunkin with the intent that it be used to purchase the property for plaintiff or as a loan to enable her to purchase the property on her own behalf. We give substantial weight on de novo review to the trial court's appraisal of conflicting testimony. *Berean Fundamental Church Council v. Braun,* 281 Or 661, 576 P2d 361 (1978). The trial court did not make explicit findings of fact, but the court's oral pronouncement from the bench and the written order indicates it found the money was given as a loan. In arriving at that conclusion the court, of necessity, had to resolve conflicts in the testimony in favor of Luella McJunkin's version. We do not have the same opportunity as the trial court had to make those judgments and must give great weight to the findings respecting credibility implicit in the court's conclusion, and we find no firm basis in the record to reach a different factual conclusion.[2] It follows, since there was no agreement that Mrs. McJunkin use the money to purchase the property for plaintiff, that critical foundation for imposing a constructive trust is not established. Absent a duty arising out of the requisite express or implied agreement, the existence or not of a confidential relationship is irrelevant.

---

[1]The language from *Shipe et al v. Hillman,* 206 Or 556, 292 P2d 123 (1955), by its terms applies where the purported trust *res,* i.e., the real property, was transferred by the plaintiff to the one against whom the constructive trust remedy is asserted. Here the plaintiff only claims to have furnished the funds to purchase the property; he did not convey the house. Nonetheless the principle is the same. "The constructive trust may be defined as the device used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." 6 Bogert, Trusts and Trustees 3-5 § 471 (2d Ed 1960). *See Albino v. Albino,* 279 Or 537, 549-51, 568 P2d 1344 (1977).

[2]The burden of proof in a constructive trust case is by "strong, clear and convincing evidence." *Albino v. Albino,* 279 Or 537, 550, 568 P2d 1344 (1977).

■ Plaintiff next contends the theory of resulting trust entitles him to relief. We recently stated in *Hurlbutt v. Hurlbutt,* 36 Or App 721, 585 P2d 724 (1978):

> "A resulting trust is not established by virtue of any expressed agreement or contract. Rather it arises under the doctrine of presumed intent that the party who furnished the purchase price of a parcel of land contemplated that such property would inure to his own benefit and not that of the record title holder * * *." 36 Or App at 724.

There is no question that the money for the purchase of the one-half interest in the property was furnished by plaintiff. A presumption then arose by operation of law in favor of the plaintiff as the person providing the consideration and was sufficient to invoke the remedial device of a resulting trust unless the evidence showed a contrary intent. *Rhodes v. Peery,* 142 Or 165, 19 P2d 418 (1933).

■ As indicated earlier in this opinion there was conflicting evidence regarding the intention of the parties when the money was transferred. Resolution of that conflict required an appraisal of the witnesses' credibility. The implication of the court's oral statements and the written order is that the court believed the mother's testimony that the money was furnished to her as a loan. We find no basis in the record to make a contrary finding. There was evidence which, if believed, was sufficient to overcome the presumption, and we are persuaded that the plaintiff intended to loan his mother the money. That he intended and expected to continue to live in the house just as he had done from time to time previously does not compel a contrary conclusion, for a loan and a purchase of an interest are both consistent with that intent and expectation. The strongest evidence for the plaintiff was the letters from defendant's attorney, but their impact is diminished, not only by the mother's denial of their having been authorized, but also by the circumstances that in 1975 she was an elderly lady somewhat hard of hearing, who found herself in a

[ 573 ]

property dispute with her disabled son. They are not irrefutable proof of what *plaintiff* intended in 1968. On the other hand, plaintiff's testimony that his intent then was to secure a home for his mother is most consistent with an intention to make a loan.

It follows, since Mrs. McJunkin was to have the record title and the beneficial interest in the property, there is no basis for imposition of a resulting trust.

Affirmed.