Argued and submitted July 28, reversed December 15, 1993, reconsideration denied
April 13, petition for review denied May 10, 1994 (319 Or 80)

Joyce L. HOLLEN,
*Appellant,*

*v.*

Wesley D. FITZWATER,
Personal Representative of the Estate of
Kenneth Otto Valberg, Deceased,
Valberg Building Materials, Inc.,
an Oregon corporation, Jack K. Valberg,
James D. Valberg and Gary Valberg,
*Respondents,*

*and*

Raymond R. REIF,
former Personal Representative of the Estate of
Kenneth Otto Valberg, Deceased,
*Respondent below.*

(84-9-113; CA A73127)

865 P2d 1298

James Cartwright argued the cause and filed the briefs for appellant.

Michael G. Hanlon argued the cause for respondents Valberg Building Materials, Inc., Jack K. Valberg, James D. Valberg and Gary Valberg. With him on the brief was David R. Ambrose & Associates, P.C.

No appearance by respondent Wesley D. Fitzwater.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiff appeals a judgment imposing a constructive trust on land to which she holds legal title. On *de novo* review, we conclude that defendants did not prove the elements of a constructive trust and reverse.

Plaintiff was married to Valberg, who was the majority shareholder and president of Valberg Building Materials (VBM). Plaintiff was VBM's corporate secretary. VBM owned various properties and businesses. Sometime in 1968, after a series of transactions between Valberg and other members of his family, legal title to tax lots 5800 and 6200 (the lots) was recorded in the names of plaintiff and Valberg as tenants by the entirety.

In 1976, VBM contracted to sell a business located on the lots. The contract of sale listed VBM as the seller of inventory, equipment and the lots. Plaintiff and Valberg signed the contract in their corporate capacities. Plaintiff was also a real estate agent at that time and signed the earnest money agreement as the selling agent. The buyers, Hertrich and Hathaway, made payments on the contract to Valberg and plaintiff, who then transferred the funds into VBM's account. Valberg died testate in 1981, leaving ownership and control of VBM to his sons.

In early 1982, the sons discovered that plaintiff held legal title to the lots. They did not inform plaintiff or the buyers of that discovery. They instructed Hertrich to make the remaining payments directly to VBM. Toward the end of the contract period, Hertrich became aware of the controversy involving the ownership of the lots. The sons, through their attorney, prepared a quit claim deed that transferred plaintiff's interests in the lots to VBM. When the buyers presented the deed to plaintiff, she refused to sign it. Plaintiff asserts that it was at that time that she first realized that she was the legal owner of the lots.

This action began in 1984, when plaintiff sought a declaratory judgment regarding the ownership of other tax lots not at issue on appeal. In 1989, defendants filed an amended counterclaim, asserting that the trial court should impose a constructive trust in favor of VBM on the lots. They alleged, in part:

"23.

"Sometime in 1969,[1] an oral agreement was entered into by and between VBM and Kenneth O. Valberg and plaintiff directly or, in the alternative, by and between VBM and Kenneth O. Valberg, for himself and as the agent for plaintiff, under which VBM purchased Tax Lots 5800 and 6200 for a consideration of $3,000. Thereafter, VBM exercised ownership and control not only over the improvements upon but also the real property known as Tax Lots 5800 and 6200.

"* * * * *

"30.

"At all material times herein, the Valberg sons reposed trust and confidence in Kenneth O. Valberg and plaintiff, and both occupied a fiduciary relationship with respect to the Valberg sons, not only as parents, but as officers and directors of VBM, and in the case of Kenneth O. Valberg, as majority shareholder in VBM at all material times. Kenneth O. Valberg and plaintiff both occupied a fiduciary relationship with respect to VBM, as its officers and directors at all material times.

"31.

"Since 1969, Kenneth O. Valberg and plaintiff knew of their agreement with VBM, and its terms, and that VBM was the equitable owner of Tax Lots 5800 and 6200, even though legal title to the Tax Lots had not yet been conveyed to VBM.

"32.

"At all material times after 1969, Kenneth O. Valberg and plaintiff held legal title to Tax Lots 5800 and 6200 in trust for VBM. In 1988, VBM duly requested plaintiff to execute a good and sufficient deed to Tax Lots 5800 and 6200, conveying legal title to the same to VBM, which request was refused. Plaintiff now holds legal title to Tax Lots 5800 and 6200 in constructive trust for VBM."

After trial, the court found that plaintiff held the lots in constructive trust for VBM and required her to convey all her right, title and interest in the lots to defendants. Plaintiff appeals that judgment, arguing that there is no constructive trust.

---

[1] There is some discrepancy regarding the date. It is either 1968 or 1969.

Oregon courts have long recognized the doctrine of constructive trust. *See, e.g., Hughes v. Helzer*, 182 Or 205, 185 P2d 537 (1947); *Meek v. Meek*, 79 Or 579, 156 P 250 (1916). They have at various times turned to treatises, law review articles, cases from other jurisdictions and the *Restatement of Restitution* for help in defining the doctrine and for guidance in applying it to particular cases. *See, e.g., Albino v. Albino*, 279 Or 537, 568 P2d 1344 (1977); *Belton v. Buesing*, 240 Or 399, 402 P2d 98 (1965); *Shipe et al v. Hillman*, 206 Or 556, 292 P2d 123 (1956); *Barnes v. Eastern & Western Lbr. Co.*, 205 Or 553, 287 P2d 929 (1955).

 Determining the boundaries of the doctrine of constructive trust is not a simple task, because there are countless situations in which this equitable remedy may be imposed. *See generally* 5 Scott, *Law of Trusts* §§ 461-62 (6th ed 1967). However, a survey of Oregon decisions shows that at least three elements must be present before a court imposes a constructive trust:[2] (1) the existence of a confidential or fiduciary relationship, *see, e.g., Shipe et al v. Hillman, supra*, 206 Or at 566; *Hughes v. Helzer, supra*, 182 Or at 223; *Templeton v. Bockler*, 73 Or 494, 506, 144 P 405 (1914); (2) a violation of a duty imposed by that relationship, *see, e.g., Albino v. Albino, supra*, 279 Or at 550; *Crowhurst v. Burton*, 54 Or App 989, 993, 636 P2d 1023 (1981); and (3) failure to impose the constructive trust would result in unjust enrichment. *Belton v. Buesing, supra*, 240 Or at 409; *Barnes v. Eastern & Western Lbr. Co., supra*, 205 Or at 565. Proof of the elements "must be by strong, clear and convincing evidence." *Albino v. Albino, supra*, 279 Or at 550. "Clear and convincing evidence means that the truth of the facts asserted is highly probable." *Cook v. Michael*, 214 Or 513, 527, 330 P2d 1926 (1958).

 In this case, defendants' proof falls short. Although there is evidence that there was a fiduciary relationship between defendants, plaintiff and VBM, defendants have not proved that plaintiff violated a duty imposed by that relationship. Defendants allege that plaintiff was a party to an oral agreement in which Valberg and plaintiff, or Valberg individually and as plaintiff's agent, sold the lots to VBM for $3,000.

---

[2] Each element is either expressly or implicitly required in the cited opinions.

Their theory, apparently, is that, because plaintiff participated or acquiesced in the sale, she breached her fiduciary duty to defendants by wrongfully retaining legal title to the lots. However, the only evidence supporting the allegation of an agreement to sell came from one of Valberg's sons, who testified that he had examined VBM's financial statements and concluded that there was a $3,000 land basis adjustment that could only be accounted for by VBM's purchase of the lots. He also testified that his father told him that one day VBM would sell the lots. At best, that evidence permits an inference that Valberg orally agreed to sell the property to VBM. As a tenant by the entirety, however, Valberg could not convey plaintiff's interest in the property without her consent. Even if the evidence convinced us that Valberg had orally agreed to sell the property, there is no convincing evidence in the record that plaintiff consented to or participated in the alleged oral sale of the property to VBM. Because plaintiff's consent to or participation in an agreement to sell is the predicate to defendants' claim of a breach of fiduciary duty, defendants cannot prove that she breached that duty by refusing to convey the lots to VBM.

Defendants also argue that, because plaintiff was the selling agent on the earnest money agreement in the VBM transaction, she breached a fiduciary duty by not disclosing to VBM that the lots were owned by Valberg and plaintiff. We do not reach that issue, because defendants did not rely on that theory at trial. *Millers Mut. Fire Ins. Co. v. Wildish Const. Co.*, 306 Or 102, 107, 758 P2d 836 (1988). Defendants' other arguments do not require discussion.

Because we find that there is no convincing evidence that plaintiff violated a duty imposed by her fiduciary relationship to VBM and the Valberg sons by retaining legal title to the lots, there is no basis on which to impose a constructive trust.[3]

Reversed.

---

[3] Because we find that plaintiff did not violate any duty imposed by a fiduciary or confidential relationship, we do not consider the issue of unjust enrichment.