Argued and submitted January 24, reversed and remanded September 16, 1992

CERTIFIED MORTGAGE COMPANY,
*Plaintiff,*

*v.*

Michael SHEPHERD,
Neal G. Buchanan, William L. Wales
and Phyllis Wales,
*Respondents,*

Bernadette CRAWFORD,
*Appellant,*

*and*

UNITED STATES OF AMERICA,
*Defendant.*

(89003445CV; CA A65949)

838 P2d 1082

William R. Turnbow, Eugene, argued the cause for appellant. With him on the briefs was Hershner, Hunter, Moulton, Andrews & Neill, Eugene.

George W. Kelly, Eugene, argued the cause for respondents Michael Shepherd and Neal G. Buchanan.

No appearance for respondents William L. and Phyllis Wales.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This is an action to quiet title to real property brought by plaintiff Certified Mortgage Company (Company) on behalf of the nominal defendant Crawford, who is the real plaintiff in interest. Crawford claims rights in the property adverse to defendants Shepherd[1] and Wales (defendants), judgment lienors of the property. Crawford appeals from a trial court decision that defendants have judgment liens against the property prior and superior to her interests. We reverse and remand.

Company is an Oregon corporation in the business of brokering and managing loans for investors. In 1981, Crawford, a member of the Klamath Tribe, received her share of the proceeds of the sale of certain tribal lands. After seeing a television advertisement for Company, she contacted it to discuss an investment of $75,000. On April 2, 1981, Crawford delivered that money to Company to loan to Dollard, with the understanding that the loan would be secured by real property owned by Dollard. Company gave Crawford a promissory note (first Company note) for $75,000, with interest at 18% per annum. The note provided that interest payments were to be made "monthly beginning May 7, 1981 and continuing until April 7, 1984 at which time the entire unpaid balance of principal and interest shall become due and payable." Company's representative, Marlatt, testified that the note was given as a "receipt," not as evidence of a debt owed by Company to Crawford. He also testified that, although parties to transactions such as this usually execute a written servicing agreement and he thought that there had been one in this case, he could not find it. Company obtained $10,000 from Mr. and Mrs. Hanson, also investors, to make up the total Dollard loan of $85,000.[2]

On April 7, 1981, Dollard signed a promissory note to Company (first Dollard note), assigning his vendee's interest in a land sale contract for his business property to Company as a security for the loan. Company then issued to Crawford a new promissory note (second Company note), which, like the

---

[1] Also named as a defendant is Buchanan, the assignee of Shepherd's judgment for collection purposes.

[2] The Hansons are not parties to this proceeding.

first Company note, was for $75,000 at 18% interest with a three-year maturity. The new note, however, indicated that it was secured by a 75/85 interest in the first Dollard note to Company. It also said that the first Dollard note was secured by "an interest in" Dollard's business property. In a letter to Crawford, Company said that, due to the complicated nature of the transaction, the new note would "be easier for [Crawford] to understand," and it also asked Crawford to return the first Company note. There is no indication in the record that Crawford did that.

In 1982, Dollard defaulted on his loan payments and declared bankruptcy. On January 26, 1983, after negotiations with the bankruptcy trustee and Company, Dollard signed a second promissory note to Company (second Dollard note), in the amount of $85,000 at 18% interest, to be secured by a trust deed to an apartment building owned by him. The deed named a trustee and made Company the beneficiary. The apartment building is the real property that is the subject of this appeal.

In late 1983, Dollard defaulted on the second Dollard note. On January 4, 1984, Company sent a letter to Crawford, advising her that the "loan you own" was in default and that foreclosure of the trust deed was being pursued. The letter explained that, on foreclosure, Crawford would have the option of "taking the property or having [Company] resell it on your behalf." On July 11, 1984, the property was foreclosed and a trustee's deed was executed, transferring the property to Company as the sole grantee because of Dollard's default. Company recorded that deed.

Pursuant to Crawford's request, Company managed the apartment building during the time that Company tried to resell it. Company collected rents and sent Crawford and the Hansons their respective shares. During that time, Crawford obtained certain loans, on which she was personally liable, to make repairs and pay taxes on the property and to buy out the Hansons' interest. Crawford also used the loans to pay the attorney fees on the foreclosure, recording fees, investor loan fees, property management fees and other expenses to Company.

In February, 1987, Crawford went to an attorney, who sent two letters to Company, indicating that no payments had been made on the second Company note and demanding that Company execute a deed to the apartment building to Crawford. Company did not respond to the letters, and the attorney did not follow up on them. In 1986, 1987 and 1988, the money judgments of defendants were docketed against Company. The judgments did not arise out of any transaction related to the Dollard property. On October 27, 1987, Company ceased to be an active corporation in Oregon.

As a part of its activities in winding up its corporate affairs, Company filed this proceeding to quiet title to the apartment building. Company requested that the trial court declare title to be in Crawford and not subject to judgment liens of defendants.

The trial court found that, because no written servicing agreement had been made, an agency relationship between Company and Crawford would have to be implied. However, even if an agency were implied, the court concluded, title could not be quieted in favor of Crawford unless there was a resulting trust between the parties, because there was no indication that Crawford's interest had ever been recorded or even referred to in the Dollard loan transaction. The trial court found that there was no resulting trust between Company and Crawford, because it was not until late 1983, when Dollard defaulted on the second Dollard note, that Company's actions indicated an intent to act as a "trustee" or "servicing agent" for Crawford. The court found no documentary evidence of a trust relationship existing before that time, although there was testimony that that had been Company's intent. Giving very little in the way of an explanation, the court's conclusion was essentially that, because Company was not holding the property in trust for Crawford and because the property was recorded in Company's name, Company's creditors had no notice of any interest that Crawford may have had in the property. *See* ORS 18.350(1); ORS 18.370. Therefore, the property was subject to defendants' judgment liens. The court did indicate that Crawford's $75,000 investment was secured by either the first or second Company note but, because it did not consider that note to be secured by the Dollard property, the

note presumably would be enforceable only in a separate proceeding.

Crawford argues that the trial court erred in declaring that defendants have judgment liens encumbering the property, because she is the equitable owner of the property. Crawford contends that, although the judgment liens are based on ORS 18.350(1) and ORS 18.370, the rule in *Wilson v. Willamette Industries*, 280 Or 45, 569 P2d 609 (1977), precludes the attachment of those liens to the property in this case. ORS 18.350(1) provides:

"From the time of docketing an original or renewed judgment, as provided in ORS 18.320, such judgment shall be a lien upon all the real property of the judgment debtor within the county where the same is docketed, or which the judgment debtor may afterwards acquire therein, during the time prescribed in ORS 18.360."

ORS 18.370 provides:

"A conveyance of real property, or any portion thereof, or interest therein, shall be void as against the lien of a judgment, unless such conveyance be recorded at the time of docketing such judgment or the recording of a certified copy of the judgment or a lien record abstract as the case may be."

■    In *Wilson*, the Supreme Court construed ORS 18.350(1) and ORS 18.370[3] together and reaffirmed its holding in *Thompson et al v. Hendricks et al*, 118 Or 39, 44-45, 245 P 724 (1926), that the lien of a judgment creditor attaches only to property actually owned by the judgment debtor. A lien will not attach to property that has previously been conveyed to an innocent purchaser for value, even if that prior interest is unrecorded. *Wilson* says:

"Those two statutory provisions were not intended by the legislature to subject the property of an innocent purchaser for value to the lien of a judgment against a debtor who had previously conveyed *all of his interest* in the property in dispute to such a purchaser." 280 Or at 52. (Emphasis supplied.)

Crawford contends that she is an innocent purchaser for value of an equitable interest in the property, conveyed to

---

[3] Since the *Wilson* decision in 1977, ORS 18.350(1) and ORS 18.370 have not been amended in any way relevant to this case.

her by Company at the time of the foreclosure and before the judgment liens were entered against Company. Under the *Wilson* rule, she argues, the liens could not have attached to her equitable interest in the property. Defendants respond that, even if Crawford owns an equitable interest in the property, Company has always been the record owner of the property and had not conveyed *"all* of [its] interest" to her, as required by *Wilson*. Therefore, defendants contend, their liens could attach to the property because the record title of Company provided evidence of ownership.

■    The parties, and the trial court's decision, focus on what is *Crawford's* interest in the property to determine whether the judgments against Company may encumber the property. That is not the correct issue. Because ORS 18.350 provides that a judgment lien attaches to all of the real property of the *judgment debtor* from the time of the docketing of the judgment, the real question in this case is: Did Company own the apartment building property at the time that defendants' liens against Company were recorded? If not, the liens would not attach to that property.

■    Resulting trusts are based on the equitable doctrine that valuable consideration and not legal title to real or personal property determines the equitable title or interest. 89 CJS, "Trusts," § 98. A resulting trust arises most often when property is purchased by a third party with money supplied by a financer but title is taken in the buyer's name. In that situation, the financer does not intend the buyer to have the beneficial interest in the property, because the buyer merely holds the property in trust for the financer. *Shipe v. Hillman,* 206 Or 556, 564, 292 P2d 123 (1956). In *Hurlbutt v. Hurlbutt,* 36 Or App 721, 724, 585 P2d 724 (1978), *rev den* 285 Or 73 (1979), we explained:

> "A resulting trust is not established by virtue of any expressed agreement or contract. Rather it arises under the doctrine of presumed intent that the party who furnished the purchase price of a parcel of land contemplated that such property would inure to his own benefit and *not that of the record title holder* and that the title was taken in the name of another for some incidental purpose." (Emphasis supplied.)

*See also McJunkin v. McJunkin,* 37 Or App 567, 573, 588 P2d 61 (1978). Because resulting trusts arise by operation of law,

no writing is required. *See* ORS 93.020(2). Although the evidence of an intention to create the trust must be clear and convincing, *Shipe v. Hillman, supra,* 206 Or at 564, intent may be inferred entirely from circumstantial evidence, including the conduct of the parties. *Belton v. Buesing,* 240 Or 399, 406-07, 402 P2d 98 (1965).

The trial court held that there was no resulting trust, because it was not until late 1983, when Dollard defaulted on his second note, that Company's conduct indicated an intent to act as a trustee for Crawford. It was after that default that Company sent the letter to Crawford, explaining her options of "taking the property or having [Company] resell it on your behalf" after the foreclosure. The trial court correctly considered Company's actions at that time to be consistent with a trust relationship.

■ However, the court incorrectly assumed that, for a resulting trust to exist, it would have had to arise in 1981, when Crawford got a promissory note from Company. A resulting trust arises *at the time of the transfer of title* — in this case, on foreclosure — and it depends on the facts and circumstances at that time. *Shipe v. Hillman, supra,* 206 Or at 565; *see also Albino v. Albino,* 279 Or 537, 552, 568 P2d 1344 (1977). The trial court found, and we agree, that Company was Crawford's trustee *before* the property was foreclosed and legal title was passed to Company. The conclusion is that a resulting trust existed.

■ Although there is no evidence of a written servicing agreement, we hold, taking all of the facts and circumstances at the time of the foreclosure together, that there is clear and convincing evidence that a resulting trust arose between the parties. Company merely held the title for Crawford's benefit and did not own the property at the time that defendants' liens were docketed. Because Company never "owned" the property, it could not "convey" any part of the property to Crawford and, under *Wilson v. Willamette Industries, supra,* the judgment liens of Company's creditors could not attach to any part of the property that Company did not own. The trial court erred in declaring that the property was subject to defendants' liens.

Reversed and remanded.